Bv the Court.
Mason, J.
The plaintiff; upon the hearing of this cause, waived any claim to relief under that part of. the prayer of his bill which sought to modify and amend the decree in the original foreclosure suit, and also to that part which prayed that the plaintiff might be subrogated to the right of The Mayor, &e., against the defendants, Boyd. It was only in one of these aspects of the case that The Mayor, Aider-men, &e., were necessary or proper parties. And the bill,. therefore, as to them, must be dismissed with costs.
*520 The bill, then, is to be viewed as an original bill against James Boyd and John J. Boyd, and the question argued before us was, whether by virtue of the covenant on the part of James Boyd, contained in the conveyance to him by the plaintiff, and of the subsequent conveyance by James Boyd to John J. Boyd, the latter was personally liable to the payment of the mortgage mentioned in the pleadings. The covenant of James Boyd with the plaintiff was, that he, his heirs or assigns should pay the principal, and the interest then due, or to grow due, on the mortgage in question. The deed from James Boyd to John J. Boyd merely conveyed the same premises to him subject to the mortgage, without any covenant on his part, and the position contended for by the counsel for the plaintiff was, that in as much as James Boyd’s covenant was made for himself, his heirs or assigns, John J. Boyd, as his grantee, was bound by it equally with James Boyd; in other words, that the covenant ran with the land, and that the plaintiff had the same rights against John J. Boyd that he had against James Boyd himself.
In the examination of this question, the dates of the several instruments are all important. The mortgage, it appears by the bill, was executed by the plaintiff on or about the 2d of November, 1835, and the money secured by it was payable on the 2d of November, 1836. The conveyance by the plaintiff to James Boyd, in which the latter entered into the covenant above mentioned, for himself, his heirs or assigns, was given and bears date on the 19th of September, 1836. The conveyance by James Boyd to John J. Boyd of the premises subject to the mortgage, bears date the 8th of April, 1843. Thus, it will be perceived, that at the time when James Boyd entered into the covenant, the mortgage of the plaintiff had not become due, but at the time of the conveyance to John J. Boyd it had been due for several years. No time was specified in the covenant for the payment of the mortgage. If it had been then due, as the covenant to pay was absolute and unconditional, the money could have been demanded immediately; but as the day of payment designated in the mortgage itself had not arrived when the covenant was given, the covenant must be *521 construed a covenant to pay tbe money when that day should arrive. Tbe object and meaning of tbe covenant were to relieve tbe plaintiff from tbe payment, and as tbe mortgage was payable on, and not on or before, the 2d of November, tbis object could not probably have been attained before that time, neither could tbe plaintiff bave demanded it sooner; but bis right of action under tbe covenant accrued, if ever,, as soon as tbe mortgage became due, that is, on tbe 2d of November, 1836, and tbe plaintiff might have commenced a suit on the covenant tbe next day as well as now. If tbis be so, and we think thfe position cannot be disputed, tbe covenant was broken by nonpayment of tbe mortgage on tbe 2d of November, 1836, and being broken, its obligations did not devolve on a subsequent grantee.
Tbe principle is a familiar one in tbe law. As long ago as in tbe time of Queen Elizabeth, it was held that a purchaser of land -could not sue tbe person who bad conveyed to bis immediate grantor oñ a covenant which was broken before tbe plaintiff had acquired title. (Lewis v. Ridge, Cro. Eliz. 863.) In Grescot v. Green, (1 Salk. 199,) tbe same point was again ruled. A lessee bad in that case covenanted for him and bis assigns to furnish a bouse at such a time, and after tbe time bad expired be assigned over tbe premises, tbe bouse not having been finished according to tbe covenant. Tbe action was brought against tbe assignee of the lessee. Holt, Chief Justice, said, “ Tbis covenant shall not bind the- assignee, because it was broken before tbe assignment, — oliter,” be adds, “if broken thereafter, as if tbe lessee bad assigned before tbe time expired.”. And again, in St. Saviour’s Churchwardens v. Smith, (3 Burrow, 1271,) which was an action by tbe lessees against tbe assignee of tbe lessee, on a covenant to pull down certain bouses that stood on tbe demised premises and build new ones thereon- within seven years. The defendant pleaded that tbe estate did not come to him by assignment until after tbe expiration of tbe seven years, to which tbe plaintiffs demurred. Lord Mansfield said, “ Tbe single question was whether an assignee is liable for a breach which be never committed, and it is certain that be is not. Tbis *522 breach was committed before his time, and this covenant does not run with the land.” These cases establish, we think, the position that an assignee of a lessee or the grantee of an estate, is not liable for breaches of covenants running with the land, which were committed by those who have preceded him in the enjoyment of the estate, but only for his own violations of those covenants, and this we conceive to be not only the well-established but the only reasonable construction of the statute enabling grantees of reversions to take advantage of the conditions to be performed by lessees, &c. (1 R. L. 863 ; 1 R. S. 747, §§ 23, 24.)
It was on this principle, and on the authority mainly of Lewis v Ridge, that the supreme court of this state in Greenly v. Wilcocks, (2 John. R. 1,) held that an action would not lie in favor of the assignee of a grantee against the grantor, for breach of the covenant, of seisin, because that covenant, if-broken at all, is broken as soon as it is made, and cannot be assigned. Indeed, this has become an elementary principle.
On the supposition then that this covenant of James Boyd with the plaintiff, was one of that class of covenants which run with the land, about which it is not necessary to express an opinion, it is not binding on the defendant John J. Boyd, because it had been broken long before the property was conveyed to him. Such we have seen is the rule at law, and such also must be the rule in equity.
If the defendant John J. Boyd is not liable on the covenant of James Boyd, and as his grantee, he is not liable at all. It is not pretended that he entered into any express contract to pay the mortgage debt, and a contract cannot, in our judgment, be-implied on the face of the papers. The deed from James Boyd to him, by which the property was conveyed, passed also the title to two other pieces of property, both of them mortgaged. They were conveyed expressly subject to these mortgages, and the consideration mentioned in the deed was only $10,000. In the absence of any proof on the subject, it might reasonably be inferred that the sum of $10,000 was the estimated value of the premises over and above the incumbrances; but- surely that *523 circumstance furnishes no evidence of an agreement by the purchaser to become personally bound for the payment of the mortgage. On the contrary, the fact that the mortgagor executes a conveyance without exacting a covenant to that effect from the grantee, is evidence, and strong evidence, that it was not intended by the parties that the grantee should be thus liable. A purchaser may be willing to take premises subject to an incumbrance, and incur the risk of losing the land and the money he pays to the vendor beyond the amount of the incumbrance, and yet be very unwilling to become personally bound for any deficiency of the premises to pay off the incumbrance; and on uhe other hand, a vendor who is personally bound for the payment of the incumbrance may deem the premises such an abundant security as to be indifferent about taking from his grantee a covenant for its payment. If the parties have not themselves made any contract on the subject, I am not aware of any power in the. court to make one for them, or to subject either of them to liabilities which they did not, and for aught that appears, which they declined to assume.
There were other points argued at the hearing in opposition to this claim, which it is not necessary to notice. The bill must be dismissed with costs, as to the parties who appeared and contested the plaintiff’s claim.